**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

EDGEFIELD HOLDINGS, LLC                                                    PLAINTIFF

v.                                    No. 4:16CV00726 JLH

WILLIAM J. GAUTHIER;
and LINDA GAUTHIER                                                       DEFENDANTS

<u>**OPINION AND ORDER**</u>

Edgefield Holdings, LLC, commenced this action against William J. Gauthier ("Bill") and

Linda Gauthier on October 7, 2016, seeking to avoid and recover certain transfers of real property

and personal property made by Linda to Bill. Edgefield is the holder of a $364,425.52 judgment

against Linda. The amended complaint includes three counts: Count I alleges that certain transfers

were fraudulent under Ark. Code Ann. §§ 4-59-204(a) and 205(a); Count II alleges that, as the victim

of a crime, Edgefield is entitled to recover its costs and attorneys' fees from the Gauthiers under Ark.

Code Ann. § 16-118-107; and Count III alleges that certain transfers were fraudulent under Ark.

Code Ann. § 4-59-205(b). Edgefield has moved for partial summary judgment pursuant to Federal

Rule of Civil Procedure 56 on Counts I and III. For the following reasons, the motion is granted.

**I.**

The following facts are undisputed. On April 12, 2011, the Circuit Court of Saline County,

Arkansas, granted a default judgment in favor of Regions Bank against Vinson Paradise Golf, LLC,

Linda B. Turner (now Linda Gauthier), and Robert J. Shell jointly and severally in the amount of

$364,425.52. Document #7-1. Linda and Bill married on August 3, 2011. Documents #15-4 and

#15-5. The bank assigned the judgment to Edgefield Holdings on January 12, 2016. Document #7-

2. In February of 2016, Edgefield attempted to collect on the judgment by filing writs of

garnishment and conducting discovery.  Document #8 at 2, ¶16.  Linda has never made a payment.
Document #8 at 1, ¶1.

Edgefield brings this action in part under the Arkansas Fraudulent Transfer Act, which
prevents fraudulent transfers by a debtor who tries to avoid creditors by placing assets beyond their
reach.  *See* Ark. Code Ann. §§ 4-59-201-13.  There are three transfers at issue in the case: one
transfer of real property and two transfers of personal property.  First, Linda transferred her interest
in real property to Bill.  Linda acquired a joint interest with Bill in real property located at 7016 Ore
Trail, Bauxite, Arkansas, on August 7, 2014.  Document #8 at 3, ¶18; Document #15-2.  On April
28, 2016, she transferred her undivided one-half interest in the Ore Trail property to Bill.  Document
#8 at 3, ¶19.  Second, Linda transferred funds from her Scottrade account 5663 to a Boeing
Employees' Credit Union (BECU) account on two different occasions.  Linda was the sole owner
of the Scottrade account.  Document #8 at 4, ¶23.  Scottrade issued a check to Linda for $22,000 on
June 16, 2015.  Document #7-7.  On June 22, 2015, Linda endorsed the check, and funds in the
amount of $22,000 were then deposited into the BECU account.  Document #7-8 at 2.  At the time,
Linda and Bill were joint-account holders of the BECU account and had been since August 21, 2012,
when Bill added Linda to the account.  Document #7-6 at 1; Document #8 at 4, ¶25.  Scottrade
issued another check to Linda on April 28, 2016, for $27,521.17.  Document #7-4.  The next day,
Bill removed Linda as a joint-account holder of the BECU account.  Document #7-6 at 3-4.  Linda
endorsed the second Scottrade check, and funds in the amount of $27,521.17 were deposited into the
BECU account on May 4, 2016.  Document #7-5 at 2.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

### A.     Count I

Count I alleges that the transfer of the Ore Trail property to Bill was fraudulent under Ark. Code Ann. §§ 4-59-204(a) and 205(a).[1] Document #7 at 6-7, ¶¶35-39. If the transfer was fraudulent

---

[1] Count I also alleges that the transfers from the Scottrade account to the BECU account were fraudulent under sections 204(a) and 205(a), but the motion for partial summary judgment only mentions the real property in its request for judgment on Count I. Document #10 at 1.

and no defenses provided by Ark. Code Ann. § 4-59-208 apply, then Edgefield is entitled to avoid the transfer to the extent necessary to satisfy its claim and recover judgment for the value of the asset transferred.  Ark. Code Ann. § 4-59-207.  The Gauthiers have conceded that Edgefield is entitled to an undivided one-half interest in the Ore Trail property.  Document #16 at 4.  They argue that the property should be sold and the net proceeds divided between Bill and Edgefield.  *Id.*  Edgefield, on the other hand, asks the Court for the fair-market value of its one-half interest in the property. Document #19 at 2.

Edgefield alleges in the amended complaint that according to the Saline County Assessor's tax assessment in 2016, the Ore Trail property is worth $109,100.  Document #7 at 3, ¶18.  The Gauthiers admit that the property was assessed at $109,100, but do not admit that the assessment accurately reflects the fair-market value of the property.  Document #8 at 3, ¶18.  Edgefield has not submitted the assessment.  Because the fair-market value is disputed, the Court orders the parties to sell the Ore Trail property and divide the proceeds equally between Bill and Edgefield.

## B.    Count III

Count III alleges that the transfers from Linda's Scottrade account to the BECU account were fraudulent under Ark. Code Ann. § 4-59-205(b).  Section 205(b) provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

The Gauthiers argue that there was no transfer of funds and no payment of an antecedent debt because "Linda did not owe Bill the money; rather it was his money all of the time, despite the accounts into which the money was deposited."  Document #8 at 4, ¶23; Document #16 at 3, 5-8

4

("Even in Linda's Account 5663, the assets belong to Bill."). They rely on *Hayden v. Gardner*, in which the Arkansas Supreme Court held that a joint bank account is garnishable only in proportion to the debtor's ownership of the funds. 238 Ark. 351, 355, 381 S.W.2d 752, 754 (1964). *Hayden* is inapplicable to this case. It is undisputed that Linda was the sole owner of the 5663 Scottrade account and therefore the funds in that account. Furthermore, whether a joint account is garnishable for the debts of one depositor is a separate question from whether there was a transfer of funds invoking section 205(b).

Edgefield has met its burden to show that there is no genuine dispute as to whether Linda made a transfer to an insider—her husband, Bill, whether Linda was insolvent, and whether Bill had reasonable cause to believe his wife was insolvent. Whether the transfer was for an antecedent debt is a closer question. The fraudulent transfer from Linda to Bill must have been made in repayment of a debt to Bill. *See Elliot & Callan, Inc. v. Crofton*, 615 F. Supp. 2d 963, 968-69 (D. Minn. 2009) (applying Minnesota law codifying the Uniform Fraudulent Transfer Act). "Debt" means liability on a claim. Ark. Code Ann. § 4-59-201(5). The Court gleans from the Gauthiers' affidavits that the 5663 Scottrade account was placed in Linda's name as a form of estate planning. *See* Document #15-4 at 2, ¶12; Document #15-5 at 2, ¶17. Bill was in bad health and concerned about Linda's financial security in the event that something were to happen to him. They have consistently maintained that the money was still Bill's, even though Linda was the only person legally entitled to control the account into which it was placed. Implicit in this arrangement is the assumption that Linda and Bill agreed that she would return the money to him upon demand. *See* Document #8 at 7, ¶48 ("The closing of the Scottrade account was to return funds belonging to Mr. Gauthier."). As a matter of law, Linda's transfer of the funds back to Bill was in payment of an antecedent debt.

5

The Gauthiers have failed to generate any dispute as to the elements of section 405(b), but they raise an issue in their response regarding the garnishment of Linda's social security benefits. The Gauthiers argue that "Linda never put any money into the Scottrade Accounts.  If found otherwise, Linda's monies are sufficiently traceable, because any of her assets that are found to have gone into the Scottrade account retained the quality of money."  Document #16 at 8.  The court record includes the bank statements reflecting deposits and withdrawals made on Bill and Linda's joint-checking account with Arvest from 2013-16, the records from Scottrade, and the records from the BECU account.  First, Bill and Linda each consistently made deposits into the Arvest joint-checking account.  *See* Document #15-1.  Bill deposited money from the BECU account and the proceeds from a loan, and Linda deposited money received from social security.  Second, Linda drafted and signed checks depositing money from the Arvest joint-checking account into two Scottrade accounts: 5527 and 6572.  Document #15-1 at 39, 89, 97, 101, 150, 160, etc.  Bill and Linda were joint-account holders of the Scottrade accounts.  Documents #15-7 and #15-8.  Third, on April 30, 2015, Bill and Linda authorized the transfer of the money from the jointly held Scottrade accounts to account 5663, held solely by Linda.  *Id.*  Finally, on June 16, 2015, and April 28, 2016, Linda withdrew funds from the 5663 account and those funds were deposited into the BECU account, transferring an ownership interest in the funds from Linda to Bill in both instances. Documents #7-5 and #7-8.  Because Ark. Code Ann. § 4-59-205(b) provides that the final transfers from Linda to Bill are void as fraudulent, the issue is whether any of the funds in Linda's 5663 Scottrade account are exempt from garnishment.

Title 42 U.S.C. § 407(a) exempts benefits received through social security from "execution, levy, attachment, garnishment, or other legal process."  *See also Jones v. Goodson*, 299 Ark. 495,

498, 772 S.W.2d 609, 611 (1989) ("[I]t is undisputed that [appellant's] social security benefits were on deposit in his checking account, were readily withdrawable, and had not been invested in any manner.  Accordingly, the trial court did not err in holding that the social security benefits were exempt from execution.").  When these benefits are commingled with funds from other sources in a bank account, they generally retain their exemption.  *See In re Moore*, 214 B.R. 628 (Bankr. D. Kan. 1997); *S & S Diversified Serv., L.L.C. v. Taylor*, 897 F. Supp. 549, 552 (D. Wyo. 1995). However, the benefits are no longer exempt if they are not reasonably traceable, lose the "quality of moneys," are not readily available as needed for support and maintenance, or have been converted into permanent investments.  *See Philpott v. Essex Cnty. Welfare Bd.*, 409 U.S. 413, 416, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973) (analogizing the social security benefits exemption with the veterans' benefits exemption reviewed in *Porter v. Aetna Cas. and Surety Co.*, 370 U.S. 159, 82 S. Ct. 1231, 8 L. Ed. 2d 407 (1964)); *see also In re Alam*, 359 B.R. 142, 149 (B.A.P. 6th Cir. 2006) (collecting cases).

The Bankruptcy Appellate Panel of the Eighth Circuit has explained that "Social Security benefits are no longer protected when the recipient chooses to pay or give away those funds."  *In re Smith*, 488 B.R. 101, 104 (B.A.P. 8th Cir. 2013);[2] *see also In re Carpenter*, 408 B.R. 244, 248 (B.A.P. 8th Cir. 2009) ("It only makes sense that when the recipient of social security benefits chooses to give away or spend those funds, such funds lose the protection of § 407 in the hands of the person to whom they are paid.").[3]  This principle stems from the purpose of section 407:  "The

---

[2] In *In re Smith*, the recipient gave a portion of her social security benefits to her son.  488 B.R. 101 at 104.

[3] In *In re Carpenter*, the recipient deposited his social security benefits into the bank, maintained them in a segregated fashion, and later converted the proceeds into a cashier's check.

reason for exempting social security benefits from creditors' claims is to insure the needy have the

necessary resources for continuing basic care and maintenance." *In re Matter of Treadwell*, 699 F.2d

1050, 1053 (11th Cir. 1983) (citing *Dept. of Health and Rehab. Serv., Fla. v. Davis*, 616 F.2d 828,

831 (5th Cir.1980); *In re Estate of Vary*, 65 Mich. App. 447, 450, 237 N.W.2d 498, 500 (1975), *aff'd*

401 Mich. 340, 258 N.W. 2d 11 (1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1283, 55 L. Ed. 2d

793 (1978)).  Linda "paid" her social security benefits to Bill.  Thus, those monies are not protected

by section 407(a)'s exemption, and the payment is void under Arkansas law.

In *Treadwell*, the Eleventh Circuit held that the exemption was compromised by the transfer

of social security benefits into the hands of another.  It reasoned that "[t]he benefits in this case are

not helping the Debtor care for himself because he transferred the money without receiving value

in exchange."  699 F.2d at 1053.  The Court recognizes that Bill is Linda's husband and that her

social security benefits in his hands may theoretically still help Linda care for herself.  However, Bill

and Linda have repeatedly characterized the funds at issue in this case as "Bill's."  Document #8 at

7, ¶48 ("The closing of the Scottrade account was to return funds belonging to Mr. Gauthier.");

Document #16 at 5.  The funds paid to Bill were no longer for Linda's basic care and maintenance.

**III**.

Finally, the Gauthiers assert the defense of mutual mistake in their response to Edgefield's

motion for partial summary judgment.  The Gauthiers claim that they mistakenly believed the statute

of limitations had run on collecting the judgment against Linda and, therefore, included her name

on Bill's accounts.  Document #16 at 10.  First, mutual mistake is an affirmative defense that is

---

408 B.R. at 246.  Because he did "not pay those moneys over to other parties," he did not lose the
protections afforded by § 407.  *Id*. at 249 (citing *Philpott*, 409 U.S. at 416, 93 S. Ct. 540).

waived if not raised in the answer.  *See Landmark Bank of St. Charles Cnty. v. Saettele*, 784 F. Supp. 1434, 1440 (E.D. Mo. 1992) (citing Fed. R. Civ. P. 8(c) and 9(b)).  The Gauthiers did not raise it in their answer.  Second, mutual mistake applies when parties have entered into a contract and seek to avoid the binding force of that contract.  *See Hope v. Hope*, 333 Ark. 324, 330-32, 969 S.W.2d 633, 636-37 (1998); *Carter v. Matthews*, 288 Ark. 37, 39-40, 701 S.W.2d 374, 376 (1986).  The parties have not asked the Court to rescind or reform a contract.  Third, it is well-established that ignorance of the law is no defense.  *Hogg v. Jerry*, 299 Ark. 283, 287, 773 S.W.2d 84, 86 (1989); *Light v. Self*, 138 Ark. 221, 214 S.W. 746, 757 (1919) ("Ignorance of the law excuses no one.").  The mutual mistake defense is unavailing.

## CONCLUSION

For the foregoing reasons, the motion for partial summary judgment is GRANTED. Document #10.  When the proceedings are ripe for a final judgment, judgment will be entered in favor of Edgefield Holdings, LLC, against William J. Gauthier in the amount of $49,521.17, and the Court will order the parties to sell the Ore Trail property and divide the proceeds equally between Edgefield Holdings, LLC, and William J. Gauthier.

IT IS SO ORDERED this 2nd day of February, 2017.


J. LEON HOLMES
UNITED STATES DISTRICT JUDGE